# Illinois Official Reports

## Appellate Court

---

*People v. Saterfield*, 2015 IL App (1st) 132355

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LLOYD SATERFIELD, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2355 |
| Filed | June 12, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 99-CR-21702; the Hon. William H. Hooks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Abishi C. Cunningham, Jr., Public Defender, of Chicago (Barbara McClure, Assistant Public Defender, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |

Panel               JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice Gordon dissented, with opinion.

**OPINION**

¶ 1      Defendant Lloyd Saterfield appeals from the circuit court's dismissal of his *pro se* petition for postjudgment relief filed pursuant to section 2-1401 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1401 (West 2012)). On appeal, defendant contends, relying on *People v. Laugharn*, 233 Ill. 2d 318 (2009), that the court's *sua sponte* dismissal of the petition was premature because the court entered it before the 30-day period for the State to respond had expired. We affirm.

¶ 2      In July 2001, defendant entered into negotiated pleas of guilty to home invasion and felony murder predicated on home invasion. At the plea hearing, the prosecutor offered the following factual basis for defendant's plea.

¶ 3      The prosecutor stated that the evidence would show that on August 25, 1999, defendant and his codefendants discussed a plan to murder Niquita Johnson, who was 33 years old at that time. The original plan was to use a firearm, but they were unable to obtain one. They planned to enter Johnson's bedroom while she was asleep with knives and a garden shovel. Defendant was the first one to enter the bedroom where Johnson was asleep on the bed with her 11-month-old baby. He began to stab her "about the head and neck with the garden shovel." One of the codefendants removed the baby from the bed. Two codefendants also began stabbing Johnson. Defendant then carried Johnson from the bed to the front room of the apartment. When he heard her breathing, he stabbed her two more times with the garden shovel. Defendant and his codefendants cleaned the apartment and defendant changed his clothes. They carried Johnson's body outside, put it in the trunk of her car, and pushed the car down the street, and then defendant lit the car on fire.

¶ 4      When defendant was arrested, he gave a videotaped confession outlining the planned murder of Johnson. The medical examiner would testify that he found over 30 stab wounds on Johnson's body, primarily to her neck, shoulders, and chest. The trial court found the factual basis sufficient to support the charges, accepted defendant's plea of guilty, and entered a finding of guilty. The trial court sentenced defendant to concurrent prison terms of 60 years for felony murder and 30 years for home invasion. Defendant then filed several unsuccessful collateral attacks upon his convictions. See, *e.g.*, *People v. Saterfield*, No. 1-08-3096 (2010) (unpublished order under Supreme Court Rule 23).

¶ 5      On March 18, 2013, defendant's *pro se* section 2-1401 petition was stamped "received," by the clerk's office, criminal division. The petition sought injunctive relief for a "void sentence" alleging that the truth-in-sentencing legislation was unconstitutional and that the calculation of his "credit" under this legislation violated his constitutional rights. The same petition was also stamped "filed" on April 8, 2013, by the clerk's office, criminal division, 26th and California. On April 15, 2013, at a proceeding in the criminal division, the petition was on the court's call

and an assistant State's Attorney (ASA) asked the court for time to look at the petition, specifically to April 26, and report back to the court.

¶ 6      On April 26, 2013, the circuit court[1] concluded that defendant's petition was frivolous and patently without merit and *sua sponte* dismissed the petition. The court found:

> "[Defendant] was convicted of murder and is alleging that the Truth and Sentencing Statute is unconstitutional. The grounds that [defendant's] petition are frivolous and patently without merit. Numerous cases have held that the Truth and Sentencing is constitutional."

¶ 7      The transcript of April 26, 2013, indicates that the same ASA was present and that an assistant public defender appeared on behalf of defendant. Neither attorney spoke on the record.

¶ 8      On May 28, 2013, defendant filed a petition for rehearing and argued the merits of his petition and that the circuit court had prematurely dismissed his petition, citing *People v. Laugharn*, 233 Ill. 2d 318 (2009). On June 4, 2013, the circuit court denied defendant's *pro se* petition for rehearing.

¶ 9      Defendant's sole contention on appeal is that *People v. Laugharn*, 233 Ill. 2d 318 (2009), prohibits the *sua sponte* dismissal of a section 2-1401 petition before the expiration of the 30-day period in which the State has time to answer. Defendant argues that because the instant petition was filed on April 8, 2013, and dismissed on April 26, 2013, the cause must be remanded to the circuit court. Defendant did not file a reply brief and made no substantive arguments regarding his section 2-1401 petition in his opening brief.

¶ 10      The State responds first by arguing that the petitioner has "waived" any issues regarding the merits of the petition because of his failure to present any argument on the issues in his brief on appeal. It further contends that the circuit court's dismissal of the petition was not premature because more than 30 days had passed by the time the court denied defendant's motion to reconsider. The State further argues that the petition was properly dismissed when an ASA was present in court and did not object to the dismissal. The State finally argues that remand is unnecessary because the instant petition is meritless and a remand would be a waste of judicial resources in light of this fact.

¶ 11      As to the State's first argument that the merits of the petition have been forfeited, we agree. Petitioner has made no argument regarding the merits of his petition on appeal and has therefore forfeited these issues on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). However, were we to address the merits of defendant's petition, the result would not change.

¶ 12      With regard to defendant's challenge to the truth-in-sentencing legislation, the statute was found to be unconstitutional as enacted because the legislature violated the single-subject clause of the Illinois Constitution in enacting the law. *People v. Reedy*, 186 Ill. 2d 1, 12 (1999). *Reedy*, however, acknowledged that the constitutional infirmity was corrected when the legislature passed curative legislation, Public Act 90-592 (eff. June 19, 1998), and therefore,

---

[1]We note that the record is unclear which trial judge dismissed defendant's petition. The half-sheets indicate that Judge William Hooks was presiding, but the report of proceedings state that Judge Steven J. Goebel was presiding. The record shows that Judge Hooks denied defendant's petition for rehearing.

the act was no longer unconstitutional as applied to offenses committed after June 19, 1998. *Reedy*, 186 Ill. 2d at 17-18.

¶ 13 Here, the record indicates that defendant entered a plea of guilty in 2001, and he does not, nor can he, claim that the offenses at issue were committed prior to June 19, 1998, because the offense were committed on August 25, 1999. Therefore, his claim that the truth-in-sentencing law is unconstitutional must fail. Similarly his claim that the calculation of his good-time credit pursuant to the truth-in-sentencing law deprives him of his constitutional rights must fail, when defendant fails to explain how the application of a constitutional statute caused him a constitutional deprivation.

¶ 14 Next, we address petitioner's argument that the trial court's dismissal of his section 2-1401 petition was premature. Section 2-1401 of the Code establishes a comprehensive procedure for allowing the vacatur of final judgments more than 30 days after their entry. See *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). We review the dismissal of a section 2-1401 petition *de novo*. *People v. Laugharn*, 233 Ill. 2d 318, 322 (2009).

¶ 15 All parties to a section 2-1401 petition must be notified as provided by rule. 735 ILCS 5/2-1401(b) (West 2012). Pursuant to Illinois Supreme Court Rule 105 (eff. Jan. 1, 1989), notice of the petition shall be directed to the party against whom relief is sought and must be served either by summons, by prepaid certified or registered mail, or by publication. See also Ill. S. Ct. R. 106 (eff. Aug. 1, 1985) (notice of the filing of petition under section 2-1401 shall be given by the methods provided in Rule 105). The purpose of these rules is to notify a party of pending litigation in order to secure his presence. *People v. Ocon*, 2014 IL App (1st) 120912, ¶ 23. In construing the sufficiency of the notice, our focus is not on whether the notice is formally and technically correct but, rather, on whether the object and intent of the law were substantially attained. *Id.*

¶ 16 Our supreme court laid out the procedure for the dismissal of a section 2-1401 petition in *People v. Laugharn*, 233 Ill. 2d 318 (2009). In that case, the defendant was found guilty of first degree murder in 1996 and filed a *pro se* section 2-1401 petition in 2004, alleging that evidence that had a bearing on her case had been withheld from her. *Id.* at 320-21. Seven court days later, the circuit court *sua sponte* dismissed the petition as untimely because it was filed more than two years after the judgment. *Id.* at 321.

¶ 17 On appeal, our supreme court first addressed the State's argument that the defendant forfeited the question of timeliness because she did not raise the issue in the appellate court. The court disagreed, as "there was nothing else before that court to review other than [the defendant's] *pro se* petition and the circuit court's docket entry, which left no doubt that the single ground for the dismissal was the circuit court's determination that the petition was untimely." *Id.* at 322. The court then turned to the circuit court's *sua sponte* dismissal of the petition, concluding that the section 2-1401 petition was not ripe for adjudication because it was dismissed prior to the expiration of the 30-day period for a response. *Id.* at 323. "The circuit court's dismissal short-circuited the proceedings and deprived the State of the time it was entitled to answer or otherwise plead." *Id.* The court further held that although "*Vincent* allows for *sua sponte* dismissals of section 2-1401 petitions, it did not authorize such action prior to the expiration of the 30-day period." *Id.* (citing *Vincent*, 226 Ill. 2d at 5).

¶ 18 In the instant case, the record is unclear as to whether or when defendant's *pro se* section 2-1401 petition was served upon the State. Although the petition was stamped "received" by the clerk's office on March 18, 2013, it was not stamped "filed" until April 8, 2013. Initially,

this court notes that pursuant to Rule 105, it is the petitioner who must provide service because the petitioner is seeking new relief and the precise language of the rule provides that the notice shall state "that a judgment by default may be taken against [the respondent] for the new or additional relief unless [the respondent] files an answer or otherwise files an appearance in the office of the clerk of the court within 30 days *after service*." (Emphasis added.) Ill. S. Ct. R. 105 (eff. Jan. 1, 1989). Here, there is no indication in the record that the State was not properly served on or before March 18, 2013. In fact, there is no notice of service of any kind attached to defendant's section 2-1401 petition. This fact alone, lack of evidence of proper service, amounts to a deficient petition and we could affirm on this basis. *People v. Nitz*, 2012 IL App (2d) 091165, ¶ 13.

¶ 19 However, an application to sue or defend as a poor person attached to the section 2-1401 petition was notarized on February 8, 2013, so there is some indication the petition was prepared by defendant on or before February 8, 2013. Defendant has the burden, as the appellant, to present this court with a sufficiently complete record of the proceedings in the circuit court to support his claim of error; and, any doubts which arise from the incompleteness of the record will be resolved against him. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Accordingly, because more than 30 days passed between the receipt of the section 2-1401 petition on March 18, 2013 and its dismissal on April 26, 2013, the petition was "ripe" for adjudication and the circuit court properly dismissed it. *Laugharn*, 233 Ill. 2d at 323.

¶ 20 Even accepting defendant's contention that the petition was "filed" on April 8, 2013, the petition was properly dismissed under *Laugharn* because the State was not deprived of the opportunity to respond. Pursuant to *Laugharn*, the primary purpose of the 30-day period is to give the State sufficient time to respond to the petitioner's claims before the trial court may *sua sponte* consider the petition. *Laugharn*, 233 Ill. 2d at 323. In other words, the trial court must allow the State time to make its position known. Here, regardless of whether the petition was "filed" on March 18 or April 8, the State was not deprived of the opportunity to respond. The record reveals that the State received actual notice of the petition in open court on April 15 and requested a continuance, specifically the date of April 26 to "review the petition." At the next court date, April 26, the State did not file a response or object to the circuit court's dismissal of the petition. Accordingly, this court cannot conclude that the State's time to respond was in any way short-circuited, *i.e.*, the State was not defaulted or deprived in any way of being able to appear and defend. See *Albany Bank & Trust Co. v. Albany Bank & Trust Co.*, 142 Ill. App. 3d 390, 393 (1986) ("The notice requirements of Rule 105 are designed to prevent a litigant from obtaining new or additional relief without first giving the defaulted party a renewed opportunity to appear and defend."). See also *People v. Lake*, 2014 IL App (1st) 131542, ¶ 22 (highlighting that neither *Vincent* nor *Laugharn* discussed whether the State may waive improper service by failing to object and whether a defendant may challenge his own failure to properly serve the State as a basis for remand).

¶ 21 *People v. Ocon*, 2014 IL App (1st) 120912, is instructive. In that case, the court determined that although it was unclear whether defendant properly served the State with his section 2-1401 petition, the record showed that an assistant State's Attorney was present in court on the date the petition was docketed for review, which meant that the State had actual notice of the petition as of that date. *Id.* ¶ 31. Therefore, we determined that the trial court's *sua sponte* dismissal of the petition more than 30 days after the date the State appeared was proper because the petition was ripe for adjudication at that time. *Id.* ¶¶ 35, 41.

- 5 -

¶ 22    Similarly, here, the record shows that the same ASA was present in court on April 15, 2013, as well as on April 26, 2013, when the petition was dismissed. In other words, regardless of whether the State received the petition prior to the date it was file-stamped, the State had actual notice of the petition and chose not to object to the dismissal, thereby waiving any objection to improper service. *Id.* ¶ 41. Under these circumstances, we find no error in the dismissal of defendant's petition. See also *Lake*, 2014 IL App (1st) 131542, ¶ 31 (affirming the dismissal of the defendant's section 2-1401 petition when the State had actual notice of the petition because an ASA was present in court when the petition was docketed).

¶ 23    Our conclusion is further supported by *People v. Alexander*, 2014 IL App (4th) 130132. In that case, the defendant relied on *Vincent* and *Laugharn* to argue that the circuit court improperly dismissed his petition when it was not yet ripe for adjudication due to improper service upon the State. The court disagreed as, pursuant to *Laugharn*, the primary purpose of the 30-day period is to afford the *State* sufficient time to respond to a defendant's claims seeking relief from judgment before the court may *sua sponte* consider the petition, rather than to allow a defendant to use his own failure to comply with Rule 105 to require a remand. *Id.* ¶¶ 46-47. We find no meaningful differences between the facts of this case and those of *Alexander* and reach the same conclusion.

¶ 24    We recognize that an opposite result was reached in *People v. Carter*, 2014 IL App (1st) 122613, *appeal allowed*, No. 117709 (Ill. Sept. 24, 2014). In that case, the court distinguished *Ocon* because it could not assume that the State had knowledge of the petition and waived service simply because an ASA was listed as present on the cover page of the transcript on the date that the petition was dismissed. *Id.* ¶ 21. The court further held that because the question of whether the circuit court prematurely dismissed a section 2-1401 petition is dependent upon the date of service, a proper dismissal cannot be achieved without either service or an affirmative showing that proper service was waived by the State. *Id.* ¶¶ 24-25.

¶ 25    However, we find *Alexander*'s determination that *Vincent* and *Laugharn* do not mandate such a result to be more persuasive. Here, as in *Alexander*, the State does not contest service and has taken the position that the petition is meritless. We also note that an ASA was present in court when the petition was dismissed and did not object. There is no reason to remand this cause so that either the 30 days can run or the State can reiterate its position that defendant's petition is meritless before the circuit court. See *Alexander*, 2014 IL App (4th) 130132, ¶¶ 50-51 (concluding that remand so that the State could respond that the petition was frivolous and the petition could be dismissed a second time would be a waste of judicial resources).

¶ 26    The *Laugharn* decision has generated numerous appeals, many of them addressing whether the court improperly dismissed a petitioner's section 2-1401 petition. See *People v. Lake*, 2014 IL App (1st) 131542, ¶ 23 (citing *Nitz*, 2012 IL App (2d) 091165, *People v. Prado*, 2012 IL App (2d) 110767, *People v. Maiden*, 2013 IL App (2d) 120016, *People v. Carter*, 2014 IL App (1st) 122613, *appeal allowed*, No. 117709 (Ill. Sept. 24, 2014), and *People v. Kuhn*, 2014 IL App (3d) 130092). As pointed out above, the propriety of one of those dismissals is pending before the supreme court in *People v. Carter*, 2014 IL App (1st) 122613, *appeal allowed*, No. 117709 (Ill. Sept. 24, 2014). However, we note that since *Laugharn* was decided, there has been no reported decision in which a trial court in a criminal proceeding *sua sponte* dismissed such a petition because it was filed after the general two-year limitation period contained in section 2-1401 (735 ILCS 5/2-1401 (West 2012)), which is what occurred

in *Laugharn*. See *Laugharn*, 233 Ill. 2d at 322. Another observation made by the *Nitz* court is that both *Vincent* and *Laugharn* involved the question of whether a trial court may dispose of a *properly served* section 2-1401 petition without the benefit of responsive pleadings and without giving defendant notice of the impending ruling and the opportunity to address the court prior to the ruling. *Nitz*, 2012 IL App (2d) 091165, ¶¶ 10, 12. Here, the record does not disclose any evidence whatsoever of a *properly served* petition. So we could also conclude *Laugharn* does not control the outcome of this appeal.

¶ 27    Defendant claims that he is not basing his appeal on defective notice or service upon the State, but rather because the 30-day period had not yet expired. We disagree and conclude defendant is attempting to benefit from an argument that the 30-day period was short-circuited in this case. Therefore, defendant is attempting to use what would be his own error, improper notice or service, or lack thereof, as a means to circumvent the well established rule that a defendant may not create, agree, or acquiesce to an error, and then use that same error as a basis for an issue on appeal. See *People v. Carter*, 208 Ill. 2d 309, 319 (2003).

¶ 28    The dissent calculates the 30 days based upon the notion that the parties agree the petition was filed on April 8, 2013. However, we as a reviewing court are not bound by a party's concession. *People v. Horrell*, 235 Ill. 2d 235, 241 (2009). There is no question that the petition prepared by defendant was "received" by the clerk of the circuit court, criminal division on March 18, 2013. It is also undisputed that the same petition was "filed" in the criminal division at 26th and California, on April 8, 2013. Therefore, the trial court was well within its authority to conclude that 30 days after service had passed on April 26, when it dismissed the defendant's petition. More significant, however, is the fact that the filing date is not the operative date because the 30 days runs from the date of service, not the date of filing. See Ill. S. Ct. R. 105 (eff. Jan. 1, 1989); *Nitz*, 2012 IL App (2d) 091165, ¶ 8 n.2. Defendant, as appellant, has the burden to demonstrate an error, and on this record, he has not done so. Therefore, the dismissal was proper.

¶ 29    Further, to the extent that the dissent suggests our decision permits the State to have multiple bites at the apple, we disagree. Here, it is defendant who has had multiple bites at the apple, because this is his third opportunity to have the merits of his petition reviewed. Since we have reviewed the actual merits and find them lacking despite petitioner's obvious procedural default, we conclude the trial court did not err in dismissing the petition.

¶ 30    In light of the foregoing, we affirm the dismissal of defendant's section 2-1401 petition by the circuit court of Cook County.

¶ 31    Affirmed.

¶ 32    JUSTICE GORDON, dissenting.

¶ 33    For the following reasons, I believe that our supreme court's decision in *People v. Laugharn*, 233 Ill. 2d 318, 323 (2009), requires a different result, and thus, I must respectfully dissent.

¶ 34    In *Laugharn*, 233 Ill. 2d at 323, our supreme court held that a trial court may dismiss a section 2-1401 petition *sua sponte* so long as the dismissal occurs after the 30-day period of time in which the State has to respond.

¶ 35    The problem is that doing anything else would give the State two bites at the apple. In other words, even if the State had actual notice of the petition, the State could stand silent and do nothing and see if the trial court decides on its own to dismiss *sua sponte*. However, if the trial court ruled the other way, and granted defendant relief, the State could then object, on the ground that its 30 days to respond had not yet expired and it had not formally waived this period of time.

¶ 36    In the instant appeal, the State's sole argument is that over 30 days had elapsed between the date when the petition was filed and the date when the trial court denied defendant's motion for reconsideration. However, the State's argument poses the same problem. If the trial court had reconsidered and granted defendant's petition, then the State could still have objected on the ground that the trial court's *sua sponte* dismissal occurred less than 30 days after defendant's filing. This is a version of the proverbial "heads I win, tails you lose."

¶ 37    The majority stresses that the ASA stood silent and did not object to the trial court's dismissal. *Supra* ¶ 22. What the majority overlooks is that the ASA had no incentive to object: either the trial court would *sua sponte* dismiss or the ASA could assert the State's 30 day period to respond. Under either scenario, there was no way the State could lose on that day.

¶ 38    The majority states that it is "unclear" when this 30-day period began to run. However, there is no dispute between the parties. The petition was filed on April 8, 2013, and both parties use this date as the start date for calculating the State's 30-day period. In addition, the record supports the parties' agreement on this factual point, since the petition itself is stamped "filed" on April 8, 2013, and the ASA stated in open court on April 15 that defendant had "filed something April 8th." Thus, only 18 days elapsed between April 8 and the trial court's *sua sponte* dismissal on April 26, which is far less than the 30 days which are required.

¶ 39    The majority relies on *People v. Ocon*, 2014 IL App (1st) 120912; *People v. Alexander*, 2014 IL App (4th) 130132; and *People v. Lake*, 2014 IL App (1st) 131542. However, those cases present very different situations than the one at bar.

¶ 40    In *Ocon*, 2014 IL App (1st) 120912, ¶¶ 1, 18, defendant argued that the trial court's dismissal was premature, since he failed to properly serve the State with his petition. By contrast, in the case at bar, there is no issue that the State was properly served and, thus, no attempt by defendant to benefit from his own malfeasance. *Alexander*, 2014 IL App (4th) 130132, ¶ 47 (the appellate court affirmed the trial court's *sua sponte* dismissal, observing that the "[d]efendant now seeks to benefit by his failure").

¶ 41    In *Ocon*, the State argued that 30 days had elapsed between the date of filing, when it received actual notice, and the date when the trial court dismissed *sua sponte*. *Ocon*, 2014 IL App (1st) 120912, ¶¶ 19, 31. By contrast, in the case at bar, the State concedes that only 18 days elapsed before the trial court's *sua sponte* dismissal. Thus, *Ocon* bears little resemblance to the case at bar.

¶ 42    *Alexander* and *Lake* presented the same issue as *Ocon*, with the same result. As in *Ocon*, the *Alexander* and *Lake* defendants sought to benefit from their own malfeasance by claiming that the State's 30-day period never began to run because they had failed to serve the State properly. *Alexander*, 2014 IL App (4th) 130132, ¶ 47; *Lake*, 2014 IL App (1st) 131542, ¶ 11. As in *Ocon*, the *Alexander* and *Lake* courts affirmed, observing that "*more than 30 days*" had elapsed "*after the petition's filing.*" (Emphases in original.) *Alexander*, 2014 IL App (4th) 130132, ¶ 47; *Lake*, 2014 IL App (1st) 131542, ¶ 23 ("There is no dispute" that more than 30 days elapsed between the petition's filing and the trial court's *sua sponte* dismissal.). Like

*Ocon*, *Alexander* and *Lake* also bear little resemblance to our case, since our case does not involve issues: (1) of improper service, (2) of more than 30 days elapsing since the petition's filing, or (3) of an attempt by defendant to benefit from his own failure.

¶ 43    There is a dispute in the appellate court, in cases where a defendant improperly serves the State, whether the 30-day period will start running if the record shows that the State had actual notice. *Ocon* holds that it does (*Ocon*, 2014 IL App (1st) 120912, ¶ 39), and *Maiden* holds that it does not. *People v. Maiden*, 2013 IL App (2d) 120016, ¶ 27 ("[a]bsent *** [an] explicit statement of a waiver of improper service *** the State did not waive an objection to the improper service"); see also *People v. Carter*, 2014 IL App (1st) 122613, ¶ 25 (a "proper dismissal *** cannot be achieved without service or an affirmative showing that proper service was waived by the prosecution"), *appeal allowed*, No. 117709 (Ill. Sept. 24, 2014). However, the case at bar is not affected by this dispute because it has nothing to do with improper service.

¶ 44    This opinion chips away at *Laugharn* more than *Ocon* did. Here, neither party disputes when the 30-day period begins. As a result, it resembles *Laugharn*. Like in *Laugharn*, less than 30 days had run. *Laugharn*, 233 Ill. 2d at 323 (defendant's petition was filed on August 24, 2004, and *sua sponte* dismissed less than 30 days later on September 2, 2004). See also *Carter*, 2014 IL App (1st) 122613, ¶ 21 (reversing where there was no evidence in the record that the State had notice of the petition until the day of the trial court's *sua sponte* dismissal and thus the State's 30 days had not run). Like in *Laugharn*, the State had not formally waived the 30-day period. *Laugharn*, 233 Ill. 2d at 323. As in *Laugharn*, I would conclude that the dismissal was premature. *Laugharn*, 233 Ill. 2d at 323.

¶ 45    If an ASA is standing there, present in court, I do not find it much of an imposition to require the ASA to formally waive the 30-day period, rather than stand there silently. Anything else is gamesmanship which a reviewing court should not allow. As this court has previously observed when considering this same issue, "[p]rosecutors have a job to do and that job includes standing before the trial court and clearly and articulately stating the State's position regarding the matter at hand." *Carter*, 2014 IL App (1st) 122613, ¶ 23.

¶ 46    The State urges us to affirm in the interests of judicial economy. However, this court has previously rejected this argument, stating: "Judicial economy is best served when the prosecutor, in the first instance, affirmatively spreads of record *** whether the State intends on waiving" either the required service or its 30-day time period. *Carter*, 2014 IL App (1st) 122613, ¶ 24.

¶ 47    The "heads I win, tails you lose" quality of this proceeding is even more troubling when one considers that a *pro se* defendant is not usually present in court for the consideration and *sua sponte* dismissal of these section 2-1401 petitions.

¶ 48    Defendant specifically raised the *Laugharn* issue in his *pro se* petition for rehearing, stating: "Petitioner filed his petition *pro se* with the circuit court on April 8, 2013. Fourteen court days later, on April 26, 2013[,] the circuit court entered its *sua sponte* dismissal order. In accordance with *People v. Laugharn*, 233 Ill. 2d 318, 909 N.E.2d 802, 330 Ill. Dec. 780, this court was in err[or] in it[s] decision." When the trial court denied defendant's petition for rehearing, the trial court stated that it "sees no legal basis for the *initial* matter," and thus "the Court stands on its *previous* ruling." (Emphases added.) The transcript indicates that neither defendant nor defense counsel was present to raise the *Laugharn* issue. Since the trial court focused on the initial matter, it appears that the trial court did not consider defendant's *Laugharn* argument because no one was there to make it.

¶ 49    Thus, I would vacate the dismissal on the grounds (1) that it was premature pursuant to *Laugharn* and (2) that the trial court failed to consider the *Laugharn* issue specifically raised by defendant. For these reasons, I must respectfully dissent.