# Illinois Official Reports

## Supreme Court

***People v. Carter*, 2015 IL 117709**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KELVIN CARTER, Appellee. |
| Docket No. | 117709 |
| Filed | December 3, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Kevin M. Sheehan, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Annette Collins, Michelle Grimaldi-Stein, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Jennifer L. Bontrager, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion.<br>Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case comes before the court from an appellate court decision holding that remand is required "because the circuit judge's *sua sponte* dismissal of [defendant-petitioner's] petition for relief from judgment on the merits was premature given that the petition was not properly served on the State." 2014 IL App (1st) 122613, ¶ 1. For the following reasons, we reverse the judgment of the appellate court.

¶ 2                            BACKGROUND

¶ 3    Following a bench trial in the circuit court of Cook County, defendant, Kelvin Carter, was found guilty of the 2002 murder of Edmond Allen. Identification evidence was supplied by four occurrence witnesses. The circuit court ultimately imposed a 20-year prison sentence in addition to a 25-year enhancement, which was statutorily mandated because of the court's determination that defendant had personally discharged a firearm during the commission of the crime. The court had initially sentenced defendant to a 30-year term of imprisonment but immediately amended its determination, imposing the 20-year minimum instead after realizing that defendant was subject to the enhancement. The appellate court affirmed defendant's conviction and sentence in 2006 (*People v. Carter*, No. 1-04-1385 (2006) (unpublished order under Illinois Supreme Court Rule 23)) and this court denied leave to appeal (*People v. Carter*, 221 Ill. 2d 647 (2006) (table)).

¶ 4    Thereafter, defendant filed a *pro se* postconviction petition alleging, *inter alia*, that he was denied the effective assistance of trial counsel and that the State had engaged in multiple instances of prosecutorial misconduct. Defendant's petition was summarily dismissed, the circuit court finding it frivolous and patently without merit. The appellate court affirmed (*People v. Carter*, No. 1-07-2160 (2009) (unpublished order under Illinois Supreme Court Rule 23)), and this court denied leave to appeal (*People v. Carter*, 233 Ill. 2d 570 (2009) (table)).

¶ 5    On May 9, 2012, defendant mailed a "Motion to Vacate Judgment" in which he argued that the 25-year firearm enhancement to his sentence was void because the trial court only found him guilty of murder. Defendant also argued that the trial court was bound by its initial statement of 30 years' imprisonment regardless of the statutorily required enhancement. Defendant attached a "Proof/Certificate of Service" to his pleading, alleging that he placed it in the "institutional mail" at the Menard Correctional Center. He listed as addressees the "Clerk of Court" and "State's Atty. Office," both of "2650 S. California Avenue," Chicago, Illinois. The record shows a copy of defendant's pleading was stamped "received" by the circuit clerk on May 15, 2012. It was docketed on May 29, 2012, to be called on June 5, 2012.

¶ 6    The circuit court called the matter on June 5, 2012, but the record of proceedings indicates that only the judge and court reporter were present. A docket entry on that date evinces the circuit court's quizzical assumption that defendant intended the pleading as a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). The docket and transcript for that date show that the case was scheduled for "court review" on July 10. On July 10, the court dismissed the petition on the merits. The cover

page of the transcript of proceedings indicates that an assistant State's Attorney was present in the courtroom when the court announced that defendant's "2-1401 petition is dismissed," but the transcript does not show that the assistant State's Attorney took any action. In a written order entered July 10, the circuit court recited the law applicable to section 2-1401 proceedings and concluded with this observation and finding:

> "[P]etitioner contends that his firearm enhancement is void because the court did not find him guilty of personally discharging the firearm but only found him guilty of first degree murder. However, petitioner was found guilty of count two of his indictment which states that Kelvin Carter, without lawful justification shot and killed Edmond Allen *while armed with a firearm*, knowing that such an act created a strong probability of death or great bodily harm to Edmond Allen." (Emphasis in original.)

Neither party filed a postjudgment motion in the circuit court; thus, issues of sufficiency of service and notice to the State were never addressed.

¶ 7 In the words of the appellate court, on appeal, defendant-petitioner argued "that this court must remand this case to the circuit court because the court's *sua sponte* dismissal of his section 2-1401 petition on the merits was premature, given that the petition was not properly served on the State." 2014 IL App (1st) 122613, ¶ 8. The appellate court observed: "According to the proof of service attached to the section 2-1401 petition, defendant mailed his petition on May 9, 2012, and attempted to serve the State by placing the documents in the institutional mail at the Menard Correctional Center 'properly addressed to the parties listed above for mailing through the United States Postal Service.' " *Id.*

¶ 8 The appellate court noted that the State's response was two-fold. First, because an assistant State's Attorney was in court at the time that the petition was dismissed, and thus had actual knowledge of the petition, the State waived improper service by not objecting to it. As such, the petition was ripe for adjudication when it was dismissed for failure to state a cause of action more than 30 days after it was received by the court. *Id.* ¶¶ 9, 16. Second, alternatively, the State suggested, "it is not clear from the record on appeal that defendant's service did not comply with the requirements of Rule 105(b)." *Id.* ¶ 13.

¶ 9 The appellate court rejected the latter suggestion, stating: "the record clearly shows" that petitioner's proof of service indicated "he attempted to serve the State by placing the documents in the institutional mail at the Menard Correctional Center *** for mailing through the United States Postal Service." (Internal quotation marks omitted.) The appellate court continued, in a conclusive and dispositional vein: "There is nothing in the record that contradicts this information, nor does either party offer anything ***." *Id.* ¶ 14.

¶ 10 Then, without speaking to the merits of defendant's petition—which defendant apparently never argued—or the substance of the circuit court's ruling thereon, the appellate court reversed and remanded for further proceedings, holding that the circuit court erred in prematurely dismissing petitioner's section 2-1401 petition *sua sponte* before the petition had been properly served on the State. *Id.* ¶ 25. The court reasoned that result was dictated by our decisions in *People v. Vincent*, 226 Ill. 2d 1 (2007), and *People v. Laugharn*, 233 Ill. 2d 318 (2009):

> "Because *Laugharn* and *Vincent* demand that we base our determination as to whether the circuit court prematurely *sua sponte* dismissed a section 2-1401 petition by looking at the date of service, it necessarily follows that proper dismissal, either

with or without prejudice, cannot be achieved without service ***. See Ill. S. Ct. R. 105(a) (eff. Jan. 1, 1989); *Laugharn*, 233 Ill. 2d at 323-24; *Vincent*, 226 Ill. 2d at 5." 2014 IL App (1st) 122613, ¶ 25.

¶ 11 Having rejected the State's arguments in opposition to reversal, the appellate court determined that the appropriate disposition was to vacate the judgment of the circuit court—which had found defendant's petition lacked merit—and remand for further proceedings (*id.* ¶ 26).

¶ 12                                                          ANALYSIS

¶ 13 We review *de novo* the dismissal of a section 2-1401 petition (*Vincent*, 226 Ill. 2d at 18), the interpretation of court rules (*In re Thomas*, 2012 IL 113035, ¶ 56), and questions of law generally (*People v. Williams*, 188 Ill. 2d 365, 368-69 (1999)).

¶ 14 At the outset, we note that Illinois Supreme Court Rule 106 governs the methods of notice to be used for petitions filed pursuant to section 2-1401, providing that "[n]otice of the filing of a petition under section 2–1401 *** shall be given by the same methods provided in Rule 105." Ill. S. Ct. R. 106 (eff. Aug. 1, 1985). Rule 105(b) states that notice may be served, *inter alia*, by certified or registered mail. Ill. S. Ct. R. 105(b) (eff. Jan. 1, 1989). Once notice has been served, the responding party has 30 days to file an answer or otherwise appear. Ill. S. Ct. R. 105(a) (eff. Jan. 1, 1989).

¶ 15 As appellate panels have aptly noted, the notice requirements of Rule 105 are designed to prevent a litigant from obtaining new or additional relief without first giving the defaulted party a renewed opportunity to appear and defend. *People v. Saterfield*, 2015 IL App (1st) 132355, ¶ 20. " 'The object of process is to notify a party of pending litigation in order to secure his appearance.' " *People v. Kuhn*, 2014 IL App (3d) 130092, ¶ 11 (quoting *Professional Therapy Services, Inc. v. Signature Corp.*, 223 Ill. App. 3d 902, 910 (1992)). Some courts in this context have suggested, in construing the sufficiency of the notice, that courts should focus on whether the object and intent of the law were substantially attained rather than the formal and technical requirements. See *id.*; *People v. Ocon*, 2014 IL App (1st) 120912, ¶ 23.

¶ 16 In *Vincent*—where neither proper service on the State nor actual notice were at issue—this court held that *sua sponte* dismissals of section 2-1401 petitions are proper, on the merits, where the State does not answer or otherwise plead within the applicable 30-day period. In *Vincent*, we stated that the State's failure to answer the petition "constituted an admission of all well-pleaded facts *** and rendered Vincent's petition ripe for adjudication." *Vincent*, 226 Ill. 2d at 9-10.

¶ 17 Subsequently, in *Laugharn*—where neither proper service on the State nor actual notice were at issue—we held that petitioner's section 2-1401 petition was *not* "ripe for adjudication." (Internal quotation marks omitted.) *Laugharn*, 233 Ill. 2d at 323. Noting that "[o]nly seven days had passed since [the petition's] filing," this court found that "[t]he circuit court's dismissal short-circuited the proceedings and deprived the State of the time it was entitled to answer or otherwise plead." *Id.* In short, this court acknowledged that the 30-day period for response, specified in Rule 105, was for the *State's* benefit, and that the circuit court's *sua sponte* ruling on the petition before the State had an opportunity to respond

constituted the deprivation of an entitlement inuring to the respondent-State—*not* the defendant-petitioner.

¶ 18    In this case, the defendant's argument in the appellate court, and the appellate court's disposition, were premised upon the assumption that defendant's service on the State was deficient for failure to strictly comply with Rule 105, and that defendant's error in that regard rendered the circuit court's dismissal of defendant's petition premature. We have examined the record and now conclude it does not affirmatively demonstrate there *was* deficient service.

¶ 19    This court has long recognized that to support a claim of error, the appellant—in this case the defendant in the appellate court—has the burden to present a sufficiently complete record such that the court of review may determine whether there was the error claimed by the appellant. *In re Marriage of Gulla*, 234 Ill. 2d 414, 422 (2009). Without an adequate record preserving the claimed error, the court of review must presume the circuit court's order conforms with the law. *Id.*; see also *In re Jonathon C.B.*, 2011 IL 107750, ¶ 72 ("This court presumes that a trial judge knows and follows the law unless the record affirmatively indicates otherwise."); *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996) (same). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

¶ 20    In this case, the claimed error, which is premised on allegedly deficient service, was not addressed at all in the circuit court, by either party. The issue was first raised by defendant on appeal as a means to obtain remand after his petition was dismissed by the circuit court on the merits. Thus, there is no meaningful record from the circuit court to be reviewed. What scant record there is consists of a statement in the proof of service defendant attached to his petition: "I have placed the documents listed below in the institutional mail at Menard Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service." To serve as a basis for defendant's contention of error, that statement must affirmatively establish that defendant mailed his petition via some means other than certified or registered mail. However, all it establishes is *where* defendant mailed his petition—"the institutional mail"—and the medium through which it was to be transmitted: "the United States Postal Service." The appellate court's assumption that the language of the proof of service affirmatively established transmittal by regular mail, and thus deficient service (see 2014 IL App (1st) 122613, ¶ 14), is unwarranted on this record.[1]

¶ 21    In their briefs, the parties debate the significance of what defendant sees as shifting positions the State has taken in the course of the appellate process with respect to whether defendant's service was or was not deficient. Defendant, of course, readily concedes deficient service on the State. Since his position is premised on deficient service, it is obviously in his interest to do so. As we have noted, the State's arguments in the appellate

---

[1]Defendant suggests that "[a]s an indigent, *pro se* petitioner incarcerated at a state correctional facility, [he] lacks the access to the methods of service required by Rule 105(b)," "an obstacle this Court recognized in its amendment to Rule 12, allowing proof of service by affidavit or certification of deposit in the institutional mail." Defendant acknowledges, however, that "[t]he *proof* of service addressed by Rule 12 is distinct from the *method* of service, which is addressed in Rule 105(b)." (Emphases added.) We note that the record in this case is inadequate to demonstrate that inmates in correctional facilities lack the means to comply with the service requirements of Rule 105(b).

- 5 -

court were in the alternative. First, because an assistant State's Attorney was in court at the time that the petition was dismissed, and thus had actual knowledge of the petition, the State waived improper service by not objecting to it. *Id.* ¶¶ 9, 16. Second, the State suggested "it is not clear from the record on appeal that defendant's service did not comply with the requirements of Rule 105(b)." *Id.* ¶ 13. We see no impropriety in the State's arguments in the alternative. The State has taken a similar approach in argument before this court. Defendant insists that the State conceded in its petition for leave to appeal that there was improper service in this case. As defendant points out, there is a statement in the body of the petition wherein the State arguably concedes that the defendant served the State via regular mail, though the State claims there was no concession, that the State "simply referenced the fact that the appellate court so held by citing to the appellate court's own conclusions."

¶ 22    We mention this debate only to acknowledge that we have considered the point raised by defendant. Irrespective of the parties' arguments, the record is what it is, and, in our view, it is insufficient to demonstrate the service deficiency that defendant must establish in order to advance his argument. As far as any arguable concession is concerned, it is well established that we, as a court of review, are not bound by a party's concession. *Beacham v. Walker*, 231 Ill. 2d 51, 60-61 (2008).

¶ 23    As noted, without an adequate record preserving the claimed error, we, as a court of review, must presume the circuit court's order conforms with the law. *In re Gulla*, 234 Ill. 2d at 422. Applying that principle in this case, we cannot assume that defendant's service upon the State was deficient. Though the regular return receipt for certified mail—for example—is sufficient proof of service by certified mail (see *In re Dar C.*, 2011 IL 111083, ¶ 63 (citing 705 ILCS 405/2-16(1) (West 2006))), *the absence* of such a receipt in the record does not affirmatively establish that service by certified mail was *not* accomplished, as it is up to the sender to file the receipt or not. In this case, the matter of service—adequate or deficient—was simply not addressed by the parties in the circuit court.

¶ 24    What we *can* discern from the record is that well over 30 days had passed since the filing of defendant's petition when the circuit court dismissed defendant's petition, *sua sponte*, on the merits. Defendant's pleading was stamped received by the circuit clerk on May 15, 2012; docketed on May 29, 2012; and dismissed on July 10, 2012. An assistant State's Attorney was in attendance and voiced no objection when the circuit court announced, in open court, that defendant's "2-1401 petition is dismissed." A written order was then prepared and filed that same day, outlining the court's reasoning for the dismissal. No party filed a posttrial motion. A notice of appeal was timely filed by defendant listing, on the notice of appeal, the Cook County State's Attorney as a recipient thereof. In sum, nothing in this record affirmatively establishes that the State was not given proper notice or that the circuit court's *sua sponte* dismissal was premature. It was defendant's burden, as the appellant below, to so show. On this record, we must presume the circuit court's order was rendered in accordance with the applicable law.

¶ 25    To be sure, we encourage circuit courts to ascertain and note of record the date the State was properly served and to time any *sua sponte* rulings on pending petitions accordingly. That said, however, any section 2-1401 petitioner who seeks to use, on appeal, his own error, by way of allegedly defective service, in an effort to gain reversal of a circuit court's *sua*

*sponte* dismissal of his or her petition on the merits, must affirmatively demonstrate the error via proceedings of record in the circuit court.

¶ 26 For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

¶ 27 Appellate court judgment reversed.

¶ 28 Circuit court judgment affirmed.